IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MATTHEW A. GOLDSTEIN, PLLC,**
1012 14th Street, NW, Suite 620
Washington, DC 20005,

Plaintiff,

VS.

**UNITED STATES DEPARTMENT OF STATE**, 2201 C Street NW, Washington, D.C. 20520

**JOHN F. KERRY,** in his official capacity as Secretary of State, 2201 C Street NW, Washington, D.C. 20520

**DIRECTORATE OF DEFENSE TRADE CONTROLS,** Department of State Bureau of Political Military Affairs, Department of State, 2401 E. Street NW, Washington, D.C. 20037

**KENNETH B. HANDELMAN**, in his official capacity as Deputy Assistant Secretary, Defense Trade Controls, Department of State Bureau of Political Military Affairs, Department of State, 2401 E. Street NW, Washington, D.C. 20037

**DANIEL L. COOK,** in his official capacity as Chief of the Compliance, Registration, and Enforcement Division, Office of Defense Trade Controls Compliance, Department of State Bureau of Political Military Affairs, Department of State, 2401 E. Street NW, Washington, D.C. 20037

Defendants.

**Civil Action No. 1:15-CV-311**

**COMPLAINT**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Matthew A. Goldstein, PLLC, by and through its undersigned counsel, submits this Complaint for injunctive, declaratory, and other relief against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

**NATURE OF THE ACTION**

1. This is an action for declaratory and injunctive relief to prevent Defendants from applying the International Traffic in Arms Regulations (22 C.F.R. Part 120 et seq.) (ITAR), as administered under the authority Arms Export Control Act of 1976 (22 U.S.C. § 2778) (AECA), to legal services provided by Plaintiff, a law firm in the business of advising clients on U.S. international trade laws.

2. Defendants claim that 22 C.F.R. Part 129 (Part 129) of the ITAR applies to the provision of certain legal services by attorneys licensed to practice law by the various U.S. State courts and the District of Columbia. At the same time, Defendants fail to provide adequate notice of the specific types of legal services they seek to control under Part 129.

3. Defendants' application of Part 129 to legal services requires Plaintiff and other attorneys who may provide such services to register with the Department of State as arms brokers, to disclose confidential client information, and to provide law enforcement agents with open access to law firm records without a subpoena, warrant or other legal process subject to judicial review.

4. Plaintiff seeks a declaratory judgment that any attempt by Defendants to apply Part 129 to legal services provided by Plaintiff is unconstitutional under the Fifth Amendment to the U.S. Constitution and is an unconstitutional Ultra Vires government action.

5. Plaintiff further seeks to equitably estop Defendants from enforcing Part 129 for past services provided by the law firm and requests a permanent injunction against the Defendants to enjoin application of Part 129 to legal services provided by the Plaintiff.

**JURISDICTION AND VENUE**

6. This is an action in which the United States is a defendant and that arises under the Constitution and laws of the United States of America.

7. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, and 2201 in that this is a civil action arising under the Constitution, laws, or treaties of the United States and which seeks to compel officers or employees of the U.S. Government to perform a duty owed to Plaintiff and to declare rights and other legal obligations of the parties.

8. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by rules 57 and 65 of the Federal Rules of Civil Procedure, and by the legal and equitable powers of this Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) in that this is a civil action against officers of the United States, Defendants are present in the District, and the acts giving rise to Plaintiff's claims occurred in the District.

## PARTIES

10. Plaintiff Matthew A. Goldstein, PLLC is a law firm, organized as a Professional Limited Liability Company under the laws of the District of Columbia, in the business of providing legal services.

11. Matthew A. Goldstein is the principal of the Plaintiff and is an attorney licensed to practice law in the District of Columbia and in the State of Arizona.

12. Defendant the United States Department of State is an executive agency of the U.S. government responsible for administering and enforcing the ITAR under the authority of the AECA.

13. Defendant John F. Kerry is the Secretary of the Department of State. In this capacity, he is responsible for the operation and management of the Department, and this includes the operation and management of the Directorate of Defense Trade Controls (DDTC) and administration and enforcement of the ITAR. Defendant Kerry is sued in his official capacity only.

14. Defendant DDTC is a subordinate unit within the Department of State Bureau of Political and Military Affairs responsible for administering and enforcing the ITAR.

15. Defendant Kenneth B. Handelman is the Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs. In this capacity, he is responsible for the operation and management of DDTC, and this includes administration and enforcement of the ITAR. Defendant Handleman is sued in his official capacity only.

16. Defendant Daniel Cook is the Chief of the DDTC Compliance, Registration, and Enforcement Division of the Office of Defense Trade Controls. In this capacity, he is responsible for administration and enforcement of the ITAR registration and brokering provisions and for responding to requests for advisement on the scope of ITAR registration and brokering requirements. Defendant Cook is sued in his official capacity only.

17. Plaintiff reserves the right to amend this Compliant at a later time, as disclosure and discovery shows to be applicable, to add any additional party or assert any additional claim.

**FACTUAL ALLEGATIONS**

18. In 1996, Congress amended the AECA to allow the President to impose a variety of requirements on arms brokers. These requirements were implemented by Defendants Department of State and DDTC at Part 129.

19. Since initial implementation of the 1996 Congressional amendments, Defendant DDTC's definition of "brokering activities" subjecting persons, known as "brokers," to Part 129 requirements has been the subject of varying interpretations. These activities are broadly defined at ITAR Section 129.2(b) as "any action on behalf of another to facilitate the manufacture, export, permanent import, transfer, reexport, or retransfer of a U.S. or foreign defense article or defense service, regardless of its origin."

20. The ITAR imposes strict liability for civil violations of Part 129, which are subject fines of $500,000 per violation. *See* 22 U.S.C. § 2778(e). Criminal violations of Part 129 are subject to fines of up to $1,000,000 and twenty years in prison per violation. *See* 22 U.S.C. § 2778(c).

**Part 129 Prior Approval, Disclosure, and Access to Records Requirements**

21. 22 C.F.R. § 129.4 ("Requirement for approval") requires brokers to obtain advanced DDTC approval before engaging in brokering activities involving certain defense articles and defense services unless the activities are exempted elsewhere in the ITAR.

22. To obtain approval under 22 C.F.R. § 129.4, brokers are required by 22 C.F.R. § 129.6 ("Procedures for obtaining approval") to make a written request to DDTC that, among other things, discloses information on the action to be taken by the applicant to facilitate the manufacture, export, import, or transfer of a defense article or defense service; the identification, nationality, and contact information for all persons who may participate in the brokering activities; a description of each defense article or defense service that may be involved; the estimated quantity and dollar value of each defense article; and identification of all end-users and end-uses of the article and/or services.

23. Regardless of whether 22 C.F.R. § 129.4 requires prior approval of brokering activities, 22 C.F.R. § 129.10 ("Reports") requires that brokers provide annual reports to DDTC of brokering activities undertaken in the previous twelve months. Pursuant to 22 C.F.R. § 129.10. For each brokering activity undertaken in the previous year, the annual reports must disclose a variety of information, to include a description of each brokering activity, identification of the parties involved, and other information similar to that required by 22 C.F.R. § 129.6.

24. In addition, 22 C.F.R. § 129.11 ("Maintenance of brokering records by registrants") requires persons registered as brokers to maintain records concerning

brokering activities in accordance with 22 C.F.R. § 122.5 ("Maintenance of records by registrants"). Section 122.5(b) in turn provides:

> Records maintained under this section shall be available at all times for inspection and copying by the Directorate of Defense Trade Controls or a person designated by the Directorate of Defense Trade Controls (e.g., the Diplomatic Security Service) or U.S. Immigration and Customs Enforcement, or U.S. Customs and Border Protection. Upon such request, the person maintaining the records must furnish the records, the equipment, and if necessary, knowledgeable personnel for locating, reading, and reproducing any record that is required to be maintained in accordance with this section.

**Recent DDTC Expansion of Part 129 to Legal Services Provided by Attorneys**

25. Prior to August 26, 2013, Part 129 was not applied to legal services by attorneys. However, it has and continues to capture conduct by attorneys outside the scope of legal services, such as the receipt of finder's fees for introductions and the receipt of commissions for sales of defense articles subject to the ITAR.

26. On August 26, 2013, DDTC issued an interim final notice of rulemaking titled, "Amendment to the International Traffic in Arms Regulations: Registration and Licensing of Brokers, Brokering Activities, and Related Provisions" at 78 Fed. Reg. 52680. Among other things, the Interim Final Rule provides an exclusion from Part 129 brokering requirements for "activities by an attorney that do not extend beyond the provision of legal advice to clients" from the definition of brokering activities.

27. Supplementary Information in the Interim Final Rule states that the "legal advice" referenced in the regulation includes export compliance advice by an attorney to a client. *Id*. at 52681.

28. On October 25, 2013, Defendant DDTC posted "FAQs" on its website advising that the ITAR excludes from Part 129 requirements those "[a]ctivities conducted by an attorney, consultant, or any other professional that do not extend beyond the

provision of legal or consulting advice to clients on ITAR compliance."

29. The DDTC FAQs further contain examples of legal services provided by attorneys that the Defendants claim may constitute activities subject to Part 129, such as "introducing or recommending specific parties, structuring the transaction… and/or negotiating ITAR-controlled defense articles and services on behalf of their clients beyond contract terms of already identified foreign parties..."

30. By specifically enumerating the type of legal services they consider as falling under the exclusion in the Interim Final Rule (i.e., ITAR compliance advice to clients) and by providing broad examples of legal services that may constitute activities subject to Part 129 in the DDTC FAQs, Defendants claim that certain legal services are subject to Part 129. This fact was confirmed in June and July of 2013, when a DDTC representative advised trade news media that Defendants do in fact seek to apply Part 129 to certain forms of legal services by attorneys, such as advice on how to structure transactions involving sales of defense articles and the preparation of contracts and other documents for such transactions.

31. As a result of Defendants' Interim Final Rule, the DDTC FAQs, and the DDTC representative's advisement to the media, the scope of legal services offered by Plaintiff that Defendants subject to Part 129 remains unknown.

**Plaintiff's Advisory Opinion Request**

32. 22 C.F.R. § 129.9(a) provides that any person desiring guidance on whether an activity constitutes a brokering activity within the scope of Part 129 may request guidance from the Defendants in writing.

33. Accordingly, on August 29, 2013, Plaintiff submitted a Request for Advisory Opinion under 22 C.F.R. § 129.9(a) for guidance on whether the broker registration, prior notice, prior approval, and other requirements at Part 129 apply to the following specifically described legal services:

(A) Advising how to structure transactions involving the sale of defense articles and defense services, to include advising how to structure sales, mergers, acquisitions, and divestitures that involve the transfer of defense articles and defense services;

(B) Preparing contracts for the sale of defense articles and defense services, to include clauses, parts, and other provisions to contracts, as well as letters of intent, nondisclosure, and other documents incidental to contracts for sale, mergers, acquisitions, and divestitures;

(C) Advising on and preparing technical assistance agreements and other Part 124 agreements, to include advising on how to structure the involvement of subcontractors, sub-licensees, and other parties to Part 124 agreements;

(D) Advising on the availability of financing for export sales of defense articles and defense services, and preparation of legal documents required by financial institutions for financing of export sales of defense articles and defense services;

(E) Advising on proposals to broker and sell defense articles and defense services and preparing proposals and clauses, parts, and other provisions to proposals: and

(F) Corresponding and meeting with U.S. government personnel regarding licensing policy and specific requests to export defense articles and defense services.

34. Plaintiff's Advisory Opinion Request was specific to services offered by the law firm and provided the following additional details of the legal services subject to the request:

(A) The subject services are performed for an hourly or flat fee and no fee arrangements are on a commission or contingency basis (i.e., payment of fees is not based on the amount at issue in the underlying transaction or contingent on achieving a particular outcome);

(B) The subject services may involve any defense article, technical data, or defense services described under the 22 C.F.R. § 121, and include classified and unclassified defense articles and technical data; and

(C) The services may further involve exports and services provided to any country except as limited by U.S. arms embargoes at 22 C.F.R. § 126.1.

35. Although Defendant DDTC reports that, on average, the agency responds to advisory opinion requests within thirty days, over one year passed without a response to Plaintiff's Advisory Opinion Request. During this time, Plaintiff made repeated requests to the agency for information on the status of the Advisory Opinion Request.

36. On July 3, 2014, Defendant Cook called Plaintiff on the telephone and discussed the Advisory Opinion Request with Plaintiff at length. Among other things, Defendant Cook advised that Part 129 was focused on activities not normally performed by attorneys and that the legal services described in Plaintiff's Advisory Opinion Request are not subject to Part 129 so long as no fee arrangements are on a commission or contingency basis.

37. Also during the call, Plaintiff agreed to withdraw its Request for Advisory Opinion based on the advisement provided by Defendant Cook during the call.

38. Accordingly, on August 4, 2014, Plaintiff sent Defendant Cook a letter confirming it was withdrawing the Advisory Opinion Request based on the advisement provided by Defendant Cook that the specific legal services offered by Plaintiff, as identified in the Advisory Opinion Request, are not subject to Part 129. The final line of Plaintiff's letter stated, "please contact me immediately if any understandings stated above are incorrect."

39. Plaintiff corresponded with attorneys and public interest groups and notified them of the advisement provided by Defendant Cook on the July 3, 2014 telephone call.

40. Further relying on the advisement provided by Defendant Cook during the July 3, 2014 telephone call that the legal services described in the Advisory Opinion Request are not subject to Part 129, Plaintiff provided legal services described in the Advisory Opinion Request.

41. On February 24, 2015, a year and a half since Plaintiff submitted its Advisory Opinion Request and more than seven months since Defendant Cook's July 3, 2014 telephone call to Plaintiff, Defendant Cook sent Plaintiff a letter withdrawing the advisement he provided on the telephone call.

42. Among other things Defendant Cook's February 24, 2015 letter stated:

> Please be advised that your letter of August 29, 2013 and our conversation which took place on July 3, 2014, lacked sufficient detail for the Department to make an official determination as to whether the activities discussed constituted brokering activities.

43. Thereafter, Defendant Cook's letter reiterated the contents of the Interim Final Rule and DDTC FAQs and advised Plaintiff to submit another Advisory Opinion Request if it has further questions.

**Conflicts Between Part 129 Requirements and Ethical Rules Governing Attorneys**

44. With narrow exceptions, Ethical Rule 1.6 on "Confidentiality of Information" of the District of Columbia Rules of Professional Conduct, as adopted by the District of Columbia Court of Appeals, prohibits an attorney subject to its jurisdiction from knowingly revealing a confidence or secret of the lawyer's client; information protected by the attorney-client privilege under applicable law; and other information

gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely be detrimental to the client.

45. Comment No. 12 to Ethical Rule 1.6 provides that "the obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when the client gives informed consent, when necessary to perform the professional employment, when permitted by these Rules, or when required by law."

46. Pursuant to Rule 1.0(e) of the District of Columbia Rules of Professional Conduct, "'informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."

47. Under the District of Columbia Rules of Professional Conduct, seeking informed client consent to comply with Part 129 disclosure requirements becomes impossible when the advice necessary to provide the client with adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct requires prior disclosure of confidential information and approval by DDTC under Part 129 before such advice can be provided by the Plaintiff.

48. Further conflicting with Rule 1.6, Defendants' application of Part 129 to legal services requires that Plaintiff provide federal law enforcement agents with access to confidential and legally privileged client records without a warrant or other legal process subject to judicial review.

49. The District of Columbia Rules of Professional Conduct do not allow Plaintiff to provide law enforcement agents with the unfettered access to privileged attorney-client communications required by Part 129.

50. Moreover, although Rule 1.6 provides an exception to confidentiality in cases where a disclosure is required by law, Comment No. 22 to Ethical Rule 1.6 provides that "Whether a law requires such disclosure is a question of law beyond the scope of these Rules."

51. Part 129 further conflicts with the District of Columbia Rules of Professional Conduct by undermining independence of the bar from the government; and by creating conflicts of interest between the client and the lawyer.

52. Recognizing the conflicts between DDTC's application of Part 129 to legal services and the District of Columbia Rules of Professional Conduct, on May 1, 2014, Plaintiff submitted a Request for an Ethics Opinion to the District of Columbia Bar Ethics Committee regarding the circumstances, if any, under which the Plaintiff can comply with Part 129 requirements without violating Rule 1.6 or other rule of the District of Columbia Rules of Professional Conduct.

53. Steuart Thomsen, the Chair of the District of Columbia Bar Legal Ethics Committee, responded to Plaintiff's Ethics Opinion Request on May 30, 2014 and June 25, 2014.

54. In his June 25, 2014 letter, Thomsen advised:

> To the extent that you are required by law to reveal certain information that would otherwise be subject to the protections of Rule 1.6 prior to engaging in substantive communications with your client, you may find that it is impossible to comply with the informed consent provision found at 1.6(e)(1).

55. In both letters, Thomsen further advised: "[t]o the extent that your client(s) object to the revelation of their secrets and confidences, you should explore and utilize all legally permissible mechanisms for avoiding disclosure."

56. Similar to the District of Columbia Rules of Professional Conduct, Ethical Rule 1.6 on "Confidentiality of Information" of the State of Arizona Rules of Professional Conduct, as adopted by the Supreme Court of Arizona, prohibits an attorney subject to its jurisdiction from revealing information relating to the representation of a client unless the client provides informed consent.

**Great and Irreparable Harm**

57. Plaintiff's law practice is focused on international trade law. Its clients include exporters of military, homeland security, dual-use, and purely commercial items and technologies. In this capacity, Plaintiff advises on all aspects of U.S. export control laws and related international trade laws. Most of these legal services involve advisements on transactions subject to the ITAR.

58. As underscored by the District of Columbia Bar Ethics Committee Chair letter, Plaintiff cannot reasonably comply with Part 129 disclosure and record access requirements when such requirements conflict with the District of Columbia Rules of Professional Conduct.

59. Defendants' position that Part 129 applies to certain legal services offered by attorneys, coupled with their failure to confirm whether Part 129 applies to the specific activities identified in Plaintiff's Advisory Opinion Request, has and continues to cause Plaintiff great and irreparable harm.

60. Specifically, Defendants' refusal to advise whether legal services offered by Plaintiff are subject to Part 129 forces Plaintiff to choose between not providing the legal services or undertaking legal representations and assuming the risk that Defendants will later decide that the legal services are subject to Part 129.

61. In addition, as a result of Plaintiff's reasonable reliance on Defendant Cook's advisements, Plaintiff now faces the threat that Defendants will retroactively determine that past legal services rendered by the Plaintiff are subject to Part 129.

**FIRST CLAIM FOR RELIEF**

**(Equitable Estoppel)**

62. Plaintiff incorporates by this reference all paragraphs stated herein.

63. "[T]he fundamental principle of equitable estoppel applies to government agencies, as well as private parties." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (internal quotations omitted).

64. Concepts of equity, fairness, and justice lie at the core of the doctrine of equitable estoppel. These concepts trigger the application of equitable estoppel in a situation where a private company or an individual dealing with the government would suffer injury because of good faith reliance on governmental conduct if estoppel against the government were not applied.

65. In the present case, Defendant Cook was an authorized representative of Defendants and a government official charged with authority to determine the scope of Part 129.

66. Defendant Cook provided an advisement to the Plaintiff that the legal services described in Plaintiff's Advisory Opinion Request were not subject to Part 129. This advisement constituted a definite representation.

67. Plaintiff reasonably relied on Defendant Cook's representation in such a manner as to change Plaintiff's position for the worse.

68. Defendants, in whole or in part, engaged in affirmative misconduct that led to Plaintiff's reliance and consequent detriment.

69. Accordingly, under the principal of equitable estoppel, equity, fairness, and justice demand that Defendants be enjoined from any application of Part 129 to the legal services described in Plaintiff's Advisory Opinion Request.

**SECOND CLAIM FOR RELIEF**

**(Violation of the Fifth Amendment Due Process Clause)**

70. Plaintiff incorporates by this reference all paragraphs stated herein.

71. The Fifth Amendment to the U.S. Constitution provides that the government shall not deprive a person of "life, liberty, or property, without due process of law." This is known as the "Due Process Clause."

72. The Due Process Clause requires the government to provide fair notice of what is prohibited and prevents arbitrary enforcement of the laws.

73. In the present case, Plaintiff followed the process set forth by Defendants at 22 C.F.R. § 129.9 and submitted the August 29, 2013 Advisory Opinion Request for guidance on whether Part 129 applies to a defined set of specifically described legal services.

74. Over a year after the Advisory Opinion Request was filed, Defendant Cook called Plaintiff and advised that the activities described in the request were not subject to Part 129. Relying on this advisement, Plaintiff withdrew the Advisory Opinion Request.

75. Seven months later, Defendant Cook withdrew his advisement and instructed Plaintiff to submit another Advisory Opinion Request.

76. The acts by Defendants that led Plaintiff to withdraw its Advisory Opinion Request were unfair and have caused the procedure provided at 22 C.F.R. § 129.9 to fail of its essential purpose.

77. Defendants' unfair acts and continuing refusal to advise whether Plaintiff's legal services are subject to Part 129 have deprived Plaintiff of Plaintiff's right to fair notice of what is required under the law.

78. Accordingly, any application of Part 129 to the legal services described in Plaintiff's Advisory Opinion Request would violate the Fifth Amendment to the Constitution and must be enjoined.

**THIRD CLAIM FOR RELIEF**

**(Ultra Vires Government Action – Lack of Authority under the AECA)**

79. Plaintiff incorporates by this reference all paragraphs stated herein.

80. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208 (1988).

81. In the present case, Defendants' power to regulate conduct under the ITAR is limited to the authority delegated by Congress under the AECA.

82. The Congressional intent in enacting the AECA brokering requirements was on curbing support services to military or intelligence branches of hostile governments or groups contrary to U.S. foreign policy. *See e.g.* U.S. House, Committee on Security and Terrorism. Discussing intent of 1996 Brokering Amendments to Arms Export Control Act of 1976, Hearing, September 23, 1982 (Serial No. J-97-140). Washington: Government Printing Office, 1983; *See also United States v. Yakou*, 393 F.3d 231 (D.C. Cir. 2005) (noting Congress' concern in 1996 Broker Amendments was on U.S. persons involved in arms deals that are inconsistent with U.S. policy.).

83. Neither the AECA nor its legislative history supports any Congressional intent to subject legal services by licensed attorneys to control as arms brokering.

84. Consistent with the legal maxim *expressio unius est exclusio alterius*, (whatever is omitted by Congress in enacting a law is understood to be excluded), the absence of such intent in the legislative history of the 1996 Amendments prevents the Defendants from imposing Part 129 on legal services provided by attorneys.

85. Accordingly, because the AECA does not authorize Defendants to subject legal services provided by licensed attorneys to export controls, any such application is Ultra Vires, in violation of the Constitution and must be enjoined.

**FOURTH CLAIM FOR RELIEF**

**(Ultra Vires Government Action – Violation of Separation of Powers)**

86. Plaintiff incorporates by this reference all paragraphs stated herein.

87. Consistent with the Separation of Powers and long-standing principles of federalism under the Tenth Amendment, the regulation of attorneys is a function of state judiciaries. *See* U.S. Const. Amend. X (stating that "[t]he powers not delegated to the

United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people").

88. Under this system, the provision of legal services by attorneys is subject to comprehensive state laws, rules of procedure, and strict ethical codes.

89. Application of Part 129 requirements to legal advice by attorneys undermines the various State courts and District of Columbia's regulation of lawyers by frustrating the ability of attorneys to comply with their obligations under applicable laws.

90. Specifically, by imposing ITAR requirements for disclosure of client information and open access to law firm records by federal law enforcement agents, without a subpoena or warrant subject to judicial review, Defendants create a direct conflict between rules of professional conduct established by the Judiciary Branch and Part 129.

91. Accordingly, because Defendants' imposition of Part 129 to the legal services described in Plaintiff's Advisory Opinion request will conflict with the Separation of Powers defined in the U.S. Constitution, such government action is Ultra Vires, in violation of the U.S. Constitution, and must be enjoined.

**FIFTH CLAIM FOR RELIEF**

**(Violation of the Administrative Procedures Act)**

92. Plaintiff incorporates by this reference all paragraphs stated herein.

93. The Administrative Procedures Act requires general notice of a proposed rulemaking and an opportunity for public comment before promulgation of a rulemaking, unless the agency, for good cause, finds that notice and public comment thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 551, *et seq*.

94. Any claims of exemption from the Administrative Procedures Act's rulemaking procedures are construed narrowly and granted reluctantly. *See Environmental Defense Fund v. Gorsuch,* 713 F.2d 802, 816 (D.C. Cir.1983).

95. Legal services provided by U.S. attorneys licensed to practice law in the various States and the District of Columbia do not constitute activities that are clearly and directly related to military or foreign affairs functions within the meaning of 5 U.S.C. § 553(a)(1).

96. Defendants have not provided sufficient notice of the legal services they intend to subject to Part 129 in their August 26, 2013 Interim Final Rule or in any other notice of rulemaking. To the contrary, the Interim Final Rule leads reasonable persons to believe that the DDTC is not imposing Part 129 on any legal services provided by attorneys.

97. Accordingly, Defendants' actions in promulgating rules governing the provision of legal services by attorneys, as set forth in this Complaint, were not adopted pursuant to the notice-and-comment procedures of the Administrative Procedures Act.

98. Because Defendants took agency action "not in observance of procedure required by law," Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(D).

99. Because Defendants took agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(A).

100. Because Defendants took agency action that was "contrary to constitutional right, power, privilege, or immunity," Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(B).

101. Because Defendants took agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," Plaintiff is entitled to relief under 5 U.S.C. § 706(2)(C).

102. Plaintiff has no adequate remedy at law to correct the continuing deprivation of its constitutional and statutory rights.

103. Defendants' violations of the Administrative Procedures Act has caused and will continue to cause Plaintiff to suffer undue hardship and irreparable injury.

## PRAYER FOR RELIEF

Wheretofore, Plaintiff prays for judgment from the Court against Defendants as follows:

A. Declare that Defendants are estopped from applying Part 129 to the legal services described in Plaintiff's Advisory Opinion Request.

B. Declare that the requirements of 22 C.F.R. Part 129 are not applicable to the activities described in Plaintiff's Advisory Opinion Request, and that any attempt by Defendants to impose Part 129 on such activities by Plaintiff are null and void, of no effect, as unconstitutional under the Fifth Amendment; and

C. Declare that the requirements of 22 C.F.R. Part 129 are not applicable to the legal services described in Plaintiff's Advisory Opinion Request, and that any attempt by Defendants to impose Part 129 on such activities by Plaintiff are null and void, of no effect, as an unconstitutional Ultra Vires government action.

D. Issue a permanent injunction against Defendants enjoining them from any attempt to apply Part 129 to the legal services described in Plaintiff's Advisory Opinion Request.

E. That this Court award Plaintiff attorneys' fees incurred herein as authorized under 28 U.S.C. § 2412;

F. That this Court award Plaintiff costs of the action incurred herein; and

G. That this Court award Plaintiff such other and further relief as it deems just and proper.

Respectfully submitted,

MATTHEW A. GOLDSTEIN, PLLC

/s/ Matthew A. Goldstein
Matthew A. Goldstein, Esq. (D.C. Bar No. 975000)
1012 14th Street NW, Suite 620
Washington, D.C. 20005
Tel: (202) 550-0040
matthew@goldsteinpllc.com

*Counsel for Plaintiff*